UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RICHEKAD JEAN,

                    Petitioner,                         Case No. 1:21-cv-341

v.                                                      Honorable Janet T. Neff

TRACY JOHNS,

                    Respondent.
_____/

## OPINION

   This is a habeas corpus action brought by a federal prisoner under 28 U.S.C. § 2241.
At the time he filed his petition, Petitioner was incarcerated with the Federal Bureau of Prisons
(BOP) at the North Lake Correctional Facility in Baldwin, Michigan.  Petitioner challenges the
results of a disciplinary proceeding that resulted in the loss of good time.  In the initial pleadings
Petitioner filed in the United States District Court for the Southern District of Georgia, Petitioner
misjoined those claims to a similar challenge to a different disciplinary proceeding and to *Bivens*-
type claims against persons who had wronged him at a prior placement in Georgia.  The Georgia
court transferred the petition(s)/complaint to this Court.

    By order entered May 24, 2021, the Court severed the claims relating to the January
2020 offense from the other claims.  (ECF No. 8.)  And, by order entered June 2, 2021, the Court
directed Petitioner to file an amended petition addressing only his claims related to the January
2020 offense.  (ECF No. 10.)  Petitioner filed his amended petition on June 10, 2021.  (ECF No.
11.)  The Court directed Respondent to file an answer.  Respondent filed an answer on August 16,
2021.  In the interim, on August 8, 2021, Petitioner was released from BOP custody to the custody

of Immigration and Customs Enforcement (ICE).  Petitioner is presently housed at the Monroe County Jail pending deportation proceedings.

Petitioner is no longer in BOP custody at North Lake; thus, his request for relief that sought to accelerate his release from incarceration by restoring "good time" has been mooted to some extent.  Nonetheless, Petitioner continues to endure some restrictions as the result of his sentence because he is on supervised release for 5 years.  To the extent an adjustment to good time might impact the start and end dates of that supervised release, his petition is not moot.

The Court permitted Petitioner to submit a reply to Respondent's answer.  On August 30, 2021, Petitioner filed an "Objection" to Respondent's answer.  The objection simply reports that Petitioner will "stand firm on his claim . . . ."  (ECF No. 16, PageID.96.)

Upon review of the amended petition, the answer, and Petitioner's "Objection," the Court concludes that Petitioner's challenge to the disciplinary proceeding that resulted in the loss of good time is meritless.  Accordingly, the Court will deny his petition.

## Discussion

### I.      Factual allegations

On January 1, 2020, while Petitioner was incarcerated at the D. Ray James Correctional Facility in Folkston, Georgia, he allegedly improperly used his telephone account to facilitate a three-way telephone call.  The improper call was discovered by a monitoring clerk on January 10, 2020.  The clerk reported:

> Inmate Jean, Richekad #15776-104 placed a call on 01/01/2020 at 10:02 p.m. to number 786-775-[XXXX] and was talking to a male.  During the conversation the male and Jean talk about adding another person to the phone call and that it hung up before.  After saying this there was several second of silence (conducting a three way call) and another male voice began to talk.  By Jean making a three way call, He's (Jean) using the telephone in violation of the policy, which circumvents the ability of staff to monitor frequency of telephone use, content of calls.

2

(Incident Report, ECF No. 14-1, PageID.59.)  The Incident Report was delivered to Petitioner on January 10.

On January 17, 2020, the Incident Report was reviewed by the two-member Unit Discipline Committee.  Under the BOP Inmate Discipline Program, the Unit Discipline Committee (UDC) reviews the incident report once the staff investigation of the report is complete.  28 C.F.R. § 541.7.  The inmate is permitted to appear before the UDC during the review.  The UDC can decide whether the inmate committed or did not commit the act; and, based on the seriousness of the charged offense, may refer the incident report to the Discipline Hearing Officer (DHO) for further review.  For Greatest or High Severity offenses, the UDC automatically refers the incident report to the DHO.  Petitioner's charged offense was a "High Severity Level" offense, 28 C.F.R. 541.3, so the UDC referral to the DHO was automatic.  Moreover, the UDC is not permitted to impose the entire range of sanctions; for example, the UDC may not order the loss of good conduct sentence credit, a sanction which is available for the offense charged.  28 C.F.R. § 541.3.

The UDC referred the charge to the Discipline Hearing Officer (DHO) for further hearing.  On January 27, 2020, DHO Roger Perry conducted a hearing.  The DHO concluded the act was committed as charged and tentatively imposed sanctions including the disallowance of good conduct time and the forfeiture of non-vested good conduct time.  (DHO Report, ECF No. 14-1, PageID.55–58.)  The sanctions were "tentative" because they were subject to review and certification by a Bureau of Prisons staff member.  The DHO was employed by GEO Group, the private corporation that operates D. Ray James and North Lake under contract with the BOP.

DHO Perry forwarded his report to Jeremy Bryan, DHO Oversight Specialist for the BOP.  Mr. Bryan reviewed the report, found the hearing, determination, and sanctions to be appropriate.  (Email Exchange, ECF No. 14-1, PageID.80.)  Petitioner filed an appeal, to no avail.

3

The amended petition raises three habeas claims:

I.     The [incident report] fail[s] to allege with specificity as to how I violated
       prohibited act code 297.  The report does not indicate that I gave the caller
       instructions to call a third party.  The IR makes the leap that because "he
       heard a man's voice means that a three-way call was made.  Is it a violation
       to speak to more than one person in the household?  Is the phone call[]
       limited to the owner of the phone?

II.    Delay in UDC hearing.  28 C.F.R. 541.7.  The IR was delivered on
       01/10/2020 and staff became aware of the incident on the same date.  The
       UDC hearing was held on 01/17/2020 which is clearly well over 5 working
       days.

III.   The DHO is not a staff member of the BOP and cannot impose any
       sanctions.  Please see 28 C.F.R. 500.1(b)(1) and 28 C.F.R. 541.1.  The DHO
       is an employee of GEO Group.

(Am. Pet., ECF No. 11, PageID.20–21.)

## II.     The remedy provided by § 2241

Ordinarily, a federal prisoner must challenge the legality of his detention by motion

under 28 U.S.C. § 2255.  Nonetheless, a federal prisoner may challenge the manner or execution

of his sentence under 28 U.S.C. § 2241.  *Hill v. Masters*, 836 F.3d 591, 594 (6th Cir. 2016) (citing

*United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001)).  The federal habeas statute provides

that the proper respondent for a § 2241 action is "the warden of the facility where the prisoner is

being held.  *Rumsfeld v. Padilla*, 542 U.S. 426, 427 (2004).

A claim concerning the computation of good-conduct time can be addressed in a

§ 2241 petition. *See Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004) ("[Section]

2241 is a vehicle . . . for challenging matters concerning the execution of a sentence such as the

computation of good-time credits.").  Indeed, because this challenge to the loss of good conduct

sentence credit involves "the fact or extent of [Petitioner's] confinement," it can only be brought

as a habeas petition. *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020).

4

Where the government creates "the right to good time and itself recogniz[es] that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment [or Fifth Amendment] 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the [government]-created right is not arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  Stating that Petitioner is entitled to due process protection in connection with the disciplinary proceeding, however, does not define the scope of that protection.

The Supreme Court has recognized that the scope of due process protection in the prison disciplinary context may be limited:

> We have often repeated that "(t)he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S., at 895.  "Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Ibid*.; *Morrissey*, 408 U.S., at 481.  Viewed in this light it is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison.

*Wolff*, 418 U.S. at 561.  The Court concluded that when good time sentence credit was at issue in a prison disciplinary proceeding, a prisoner was entitled to these procedural elements:  advanced written notice of the charges; the opportunity to call witnesses and present other evidence in his or her defense; and a written decision explaining the grounds used to determine the sanctions imposed.  *Id* at 563–66.  Additionally, the Supreme Court has held "that the requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (emphasis supplied).

The limits of due process essentially define the boundaries of the protection afforded by § 2241.  There is no direct judicial review of the BOP's determinations involving reduction of "good conduct" time, see 18 U.S.C. § 3625; *Jordan v. Wiley*, 411 F. App'x 201, 214 (10th Cir. 2011), and BOP program statements are clearly not "laws . . . of the United States" such that their violation warrants relief under § 2241, *see, e.g., Reno v. Koray*, 515 U.S. 50, 61 (1995) ("[T]he Bureau's . . . 'Program Statemen[t]'. . . [is] . . .an internal agency guideline . . . akin to an 'interpretive rule' . . . ."); *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law.").

It may be that the BOP regulations regarding disciplinary procedures would be considered "laws . . . of the United States."  *See generally* 13D Charles A. Wright and Arthur R. Miller*, Federal Practice and Procedure* § 3563 (3d ed.1998) ("The reference in § 1331 to 'laws . . . of the United States' raises more difficult problems.  In general, it means that there will be federal-question jurisdiction for a claim arising under an Act of Congress or an administrative regulation or executive order made pursuant to an Act of Congress.") (footnotes omitted).[1]  Even Wright and Miller note, however, that the general rule is not "universally true;" sometimes regulations are not considered "laws of the United States."  *Id*.  Wright and Miller cite as an example, *Einhorn v. DeWitt*, 618 F.2d 347, 349–350 (5th Cir. 1980) ("[T]his action arises from an Internal Revenue Service regulation and not an Act of Congress.  [The regulation] is a part of the Internal Revenue Service's Statement of Procedural Rules promulgated under 5 U.S.C. §§ 301, 552.  Their purpose is to govern the internal affairs of the Internal Revenue Service.  They do not

---

[1] Wright and Miller are commenting on the phrase "Constitution, laws, or treaties of the United States" as it appears in 28 U.S.C. § 1331, regarding federal question jurisdiction, not as it appears in 28 U.S.C. § 2241(c)(3), regarding habeas corpus.  Nonetheless, the words are the same.

have the force and effect of law.").  *Einhorn*, in turn, cited *Luhring v. Glotzbach*, 304 F.2d 560, 563 (4th Cir. 1962) ("[T]hese procedural rules were promulgated under the authority of . . . the Internal Revenue Code . . . and the Administrative Procedures Act . . .and were published in the Federal register . . . .  In our view the procedural rules do not [have the force and effect of law]; and compliance with them is not essential to the validity of a notice of deficiency.").

       *Einhorn* and *Luhring* suggest that the nature and intention of the regulation is of significance in determining whether it should be considered a "law of the United States."  It is difficult to ignore, therefore, that the disciplinary proceedings provided for in the regulations at issue here are not subject to judicial review under the Administrative Procedures Act and they are entirely procedural in nature.  Perhaps that is why at least some federal courts have concluded that failure to comply with the regulations, without more, is not a ground for relief under § 2241.  *See, e.g., Dababneh v. Warden Loretto FCI*, 792 F. App'x 149, 151 (3d Cir. 2019) ("[E]ven where judicial review under the APA is specifically excluded by statute, judicial review remains available for allegations that BOP action violates the United States Constitution, *see Webster v. Doe*, 486 U.S. 592, 603–04 (1988), or is contrary to established federal law, *see Neal v. United States*, 516 U.S. 284, 295 (1996)."); *Martinez v. Fisher*, No. 13-cv-1150, 2015 WL 3756150, at *5 (D. Minn. Jun. 11 2015) ("[E]ven if Petitioner could establish that some of the BOP regulations were not met here, this would not entitle him to habeas relief.  Habeas relief is only available for a violation of the Constitution, laws, or treaties of the United States."); *but see Lao v. Schult*, No. 9:09-cv-00653, 2010 WL 743757, at *5 (N.D.N.Y. Feb. 25, 2010) ("In this case, it is evident that the BOP regulations governing prison disciplinary proceedings, which have the force and effect of law,

7

either were not followed or were misapplied. Thus imposition of the disciplinary action herein was contrary to the laws of the United States.").[2]

Because there is a possibility that violations of the BOP's regulations regarding prison disciplinary proceedings might, standing alone, rise to the level of a violation of the laws of the United States, the Court will consider that claim separately from the claim that the violation of the regulations resulted in a violation of Petitioner's due process rights.

A.   **Regulatory violations as "violation[s] of the . . . laws . . . of the United States"**

Petitioner first claims that the incident report did not state with specificity how Petitioner committed prohibited act code 297. A prisoner commits a code 297 violation when he "[uses] . . . the telephone for abuses other than illegal activity which circumvent[s] the ability of staff to monitor frequency of telephone, content of the call, or the number called; or to commit or further a High category prohibited act." 28 C.F.R. § 541.3, Table 1.

Section 541.5 provides for creation of the incident report:

> The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing.

28 U.S.C. § 541.5. In this instance, the incident report described Petitioner's offense as follows:

> Inmate Jean, Richekad #15776-104 placed a call on 01/01/2020 at 10:02 p.m. to number 786-775-[XXXX] and was talking to a male. During the conversation the male and Jean talk about adding another person to the phone call and that it hung up before. After saying this there was several second of silence (conducting a three way call) and another male voice began to talk. By Jean making a three way call, He's (Jean) using the telephone in violation of the policy, which circumvents the ability of staff to monitor frequency of telephone use, content of calls.

(Incident Report, ECF No. 14-1, PageID.59.)

---

[2] Although the *Lao* court concluded that violation of the regulations, even where those violations did not constitute violations of due process, could form the foundation for a § 2241 action as a violation of the laws of the United States, the *Lao* court also concluded that the violations in that case were harmless and, thus, relief was not warranted.

It is difficult to imagine how the incident report could have been more specific.  It accused Petitioner of initiating a call and then having the recipient of that call initiate a call to another number.  That practice interferes with the BOP's ability to identify the number called. Although Petitioner might contest whether a three-way call should be a violation or whether his call was, in fact, a three-way call, his claim that the incident report was not specific is utterly frivolous.

Moreover, the regulation does not call for anything other than a description of the incident and the prohibited act charged.  The incident report includes under the heading "Description of the Incident," a description of the incident.  And, under the heading "Prohibited Act Code(s)," the report identifies the prohibited act charged.  Any suggestion that the incident report here fails to satisfy the mandate of the regulation is entirely groundless.

Next, Petitioner complains that the incident report was delivered on January 10, 2020, but the UDC review was not conducted until January 17, 2020.  Those factual claims are correct.  (Incident Rep., ECF No. 14-1, PageID.59.)  Petitioner's further claim that the review was late in violation of the regulations, however, is not correct.

With regard to the timing of UDC review of the incident report, § 541.7 provides: "The UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays."  28 U.S.C. § 541.7(c).  Friday, January 10, 2020—the day the report was issued does not count.  Saturday and Sunday, January 11 and 12, 2020 do not count.  The first day counted would be Monday, January 13, 2020.  Friday, January 17, 2020—the day the UDC reviewed the incident report—is the fifth day.  Accordingly, Petitioner's suggestion that UDC review occurred too late is frivolous.

Finally, Petitioner contends that the DHO, who is an employee of GEO Group, and not a BOP staff member, cannot impose sanctions.[3]  Petitioner contends that having a GEO Group employee impose sanctions runs afoul of the regulatory statement of purpose:  "This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts." 28 C.F.R. § 541.1.  The regulations define staff as "any employee of the Bureau of Prisons or Federal Prison Industries, Inc."  28 C.F.R. § 500.1.  It appears to be undisputed that DHO Perry is not an employee of the BOP.

This argument has met with varying degrees of success in different federal courts. One such court is the United States District Court for the Southern District of Georgia, where this case originated.  In that court, in connection with a different § 2241 petition, Magistrate Judge Benjamin W. Cheesbro reasoned that in light of the stated purpose of the BOP discipline program, DHO Perry might not have the authority to impose sanctions on Petitioner.  *Jean v. Johns*, No. 5:20-cv-60, 2021 WL 1097953, at *3 (S.D. Ga. Feb. 16, 2021); *see also Khalifa v. Johns*, 5:19-cv-103, 2020 WL 6576789 (S.D. Ga. Aug. 20, 2020); *Cruz v. Johns*, 5:19-cv-86, 2020 WL 5649333 (S.D. Ga. Aug. 20, 2020); *Guzman v. Johns*, 5:19-cv-90, 2020 WL 6576786 (S.D. Ga. Aug. 12, 2020).  The problem is not that the BOP could not delegate the conduct of disciplinary proceedings or the imposition of sanctions to someone other than a BOP employee, *see, e.g., Jean*, 2021 WL 1097953, at *2 (citing *Hilario-Paulino v. Pugh*, 194 F. App'x 900 (11th Cir. 2006); the problem is that, based on the statement of purpose, the BOP did not delegate that authority.

---

[3] The authority to impose sanctions under the regulations is separate from the authority to conduct a hearing.  Although Petitioner challenges the DHO's authority to impose sanctions, he does not contest the DHO's authority to conduct the hearing.  Accordingly, the Court will not address that issue.

10

Prior to 2011, the regulations clearly precluded any person other than a BOP employee from imposing sanctions. Section 541.10(b)(1) of 28 C.F.R., prior to its repeal effective June 20, 2011, provided that "only institution staff may take disciplinary action." *Arredondo-Virula v. Adler*, 510 F. App'x 581, 582 (9th Cir. 2013). That section, coupled with the definition of staff in § 500.1(b) as "any employee of the Bureau or Federal Prison Industries, Inc.," ruled out the possibility that someone other than a BOP employee could take disciplinary action. Although the 2011 changes addressed many of the difficulties encountered when applying to private federal prisons regulations designed for a world without private federal prisons, it did not change the purpose statement. The phrase indicating that the regulations "allow[] Bureau staff to impose sanctions" remains. Some federal courts have concluded, despite the removal of the express limits that previously appeared in § 541.10, that because the purpose statement allows Bureau staff to act, it excludes anyone else. *See, e.g., Allen v. Young*, 5:18-cv-01463, 2020 WL 2477939, at *7 (S.D.W.V. Mar. 2, 2020).

The BOP has attempted to address the potential conflict. In some instances, the BOP has held a new hearing with BOP staff. *See, e.g., Villarreal v. Rickard*, No. 1:15-11467, 2018 WL 1973281 (S.D.W.V. Apr. 26, 2018); *Green v. Masters*, No. 1:14-cv-31194, 2017 WL 7312114 (S.D.W.V. Dec. 13, 2017); *Pena-Carrizoza v. Bragg*, No. 1:14-cv-25696, 2016 WL 7168412 (S.D.W.V. Aug. 16, 2016). In other instances, a BOP employee has reviewed and approved the DHO hearing, report, and sanctions. *See, e.g., Perez-Flores v. Benov*, No. 1:13-cv-01469, 2015 WL 3448067 (E.D. Cal. May 28, 2015) (herein *Perez-Flores*).

In *Perez-Flores*, the district court reviewed the procedures the BOP had put in place to address the conflict that was created by application of the BOP regulations to prisons run privately under contract with the BOP. Those procedures were set out in a March 30, 2007

memorandum which was supplemented with a document titled "Inmate Discipline at Private Facilities Technical Direction." *Perez-Flores* (Doc. 11-1, Page 26–29.)  According to the memo, the BOP created a pilot program to be implemented at the McRae Correctional Facility and the Taft Correctional Institution.  Staff at those institutions would go through BOP DHO training.  The disciplinary process would proceed as it had previously, but if the sanctions impacted good conduct time, the DHO decision would be sent to a BOP employee who would review the entire file and make an independent decision regarding the discipline and sanctions.  The sanction would not actually be entered in the prisoner's file until the BOP employee certified the disciplinary proceeding.

The BOP followed the procedures described in *Perez-Flores* in Petitioner's case. (Decl. of Jeremy Bryan, ECF No. 14-1, PageID.52) ("[A]ny DHO action that includes disallowance or forfeiture of good conduct time must be sent to the BOP for certification.").  DHO Perry advised Petitioner that a BOP staff member would review his case and certify any sanctions relating to good conduct time.  (DHO Report, ECF No. 14-1, PageID.58.)  Jeremy Bryan reviewed the report and certified the results.  (ECF No. 14-1, PageID.53, 80.)  The BOP indicates that the actual forfeiture/disallowance of good conduct time does not occur until after Jeremy Bryan certifies the results.  (BOP Appeal Resp., ECF No. 14-2, PageID.94) ("[T]he Bureau . . . reviews and certifies all GCT sanctions . . . prior to any adjustments to the inmate's sentence computation.") (emphasis in original); (Inmate Discipline Data Report, ECF No. 14-1, PageID.76–77) (sanctions relating to report numbers 3250050 and 15776-104 not imposed until after BOP review).

Section 2248 of Title 28 United States Code provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from

the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 525, 530 n.13 (1952).  Although Petitioner filed his "objection" to Respondent's answer, it consists of only a statement that he objects to Respondent's claims and stands firm on his own claims.  (Pet'r's Obj., ECF No. 16, PageID.96.)  He does not provide any facts that contradict Respondent's description of the discipline process generally or the specific details of that process in Petitioner's case.  Accordingly, the Court accepts as true Respondent's allegation that the sanctions were imposed by, or at the direction of, Jeremy Bryan, a BOP employee.  Because the sanctions were imposed by a BOP employee, the Court concludes that Petitioner has failed to demonstrate that 28 C.F.R. § 541.1 was violated.

## B.    "[V]iolation[s] of the Constitution"

Instead of focusing on the basic hallmarks of due process identified in *Wolff* and *Hill*, Petitioner relied upon the requirements of the federal regulations, identifies provisions that he claims were not satisfied during his disciplinary proceedings, and suggests that those shortcomings constitute a denial of due process.  Petitioner is simply wrong.  As the Supreme Court noted in *Sandin v. Conner*, 515 U.S. 472, 482 (1995), those procedural regulations are not designed to confer constitutional rights on inmates.  And, as the Sixth Circuit stated regarding BOP regulations in *Julick v. Snyder-Norris*, No. 16-6652, 2017 WL 5485453 (6th Cir. Mar. 1, 2017), "[a]n agency's failure to adhere to its own policies or guidelines does not constitute a violation of due process." *Id*. at *2; *see also Bonner v. Fed. Bur. of Prisons*, 196 F. App'x 447, 448 (8th Cir. 2006) ("[A] violation of prison regulations in itself does not give rise to a constitutional violation.").  Moreover, the Court has concluded that the BOP did not violate its regulations, as Petitioner complains.

Nonetheless, even in the absence of regulatory violations, Petitioner's arguments may raise due process implications.  For example, Petitioner's claim that the incident report did

not describe the charge with sufficient specificity might be interpreted as a claim that Petitioner did not receive constitutionally sufficient notice of the charges.

The requirements of notice in the prison discipline context can certainly not extend beyond the requirements for notice for a criminal prosecution.  For a criminal prosecution, the Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense.  *See*, *e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. State of Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976).  Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial.  *Id*.  "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."  *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)).  "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."  *Mira*, 806 F.2d at 639.  In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

As set forth above, the description of the charge in the incident report was quite specific.  It was sufficiently specific that Petitioner was able to present a factual defense: he argued that the person he called did not bring in another party by way of three-way calling; the person instead simply handed the telephone to another member of the same household.  The DHO was

14

not persuaded, but that does not detract from the fact that Petitioner understood the charge sufficiently to mount a defense.   Accordingly, the Court concludes that the due process requirement of notice was met in Petitioner's disciplinary proceeding.

Petitioner's second contention—that the UDC review occurred seven days after the incident report—does not directly correspond to any requirement of due process.   Perhaps Petitioner might argue that he was prejudiced by delay between the drafting of the incident report and the UDC review, but the Court cannot conceive of any prejudice that accrued to Petitioner over the course of that week and Petitioner does not identify any.   Accordingly, the Court concludes that Petitioner has failed to establish that he suffered unconstitutional delay in the disciplinary process.

Petitioner's final contention—that the DHO was not a BOP employee—does not correspond to any due process guarantee either.   It is true that "[t]he Due Process Clause entitles a person to an impartial and disinterested tribunal," *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980), but the amended petition does not suggest that the DHO was partial or interested in the result simply because he was employed by GEO Group rather than the BOP.[4]   *See, e.g., Perez-Flores*, 2015 WL 3448067, at *4 ("[T]he mere fact that the hearing officer is employed by [a private contractor] does not demonstrate that the hearing officer is partial any more than a BOP staff member hearing officer at a government-owned facility must be inherently partial.").   The Court finds that Petitioner has not presented any facts from which the Court might infer that DHO Perry acted in a partial or interested way when he heard the evidence in Petitioner's disciplinary proceeding and rendered his decision.   Moreover, to the extent Petitioner contends that a GEO

---

[4] In the regard, the amended petition differs from the initial petition.  The initial petition stated:  "The DHO is a salaried employee of GEO[,] a private corporation housing prisoners for profits, withholding good time credit serves both corporate purpose [profits] and the DHO self interest [41k and stock and stock dividen[d]s]."  (Pet., ECF No. 1, PageID.2–3.)  Petitioner abandoned that claim in his amended petition.

Group DHO might be partial, but a BOP DHO would not be partial, the BOP's certification of DHO Perry's determinations would remove any taint of partiality.

The DHO Report reveals that Petitioner was provided notice, an opportunity to be heard, and a written decision. Moreover, although Petitioner invites the Court, as he invited the DHO, to view the evidence differently, in a way that favors him, Petitioner does not deny that there was some evidence to support the determination that Petitioner had committed the offense and that loss of good conduct sentence credit was an appropriate sanction.

Because Petitioner received the procedural protections mandated under *Wolff*, and because there was "some evidence" to support the decision of the hearings officer, and because there is no evidence that the DHO was anything but impartial and disinterested, Petitioner received all the process to which he was entitled. Therefore, Petitioner has failed to show that his due process rights were violated and his § 2241 petition is properly denied.

The statute does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process. *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004). Therefore, the Court need not make such a determination.

### Conclusion

The Court will enter a judgment dismissing the petition.

Dated:    September 20, 2021                          /s/ Janet T. Neff
                                                     Janet T. Neff
                                                     United States District Judge

16